UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------X
MARGARET ZYNGER,

        Plaintiff,               <u>MEMORANDUM AND ORDER</u>

  -against-                Civil Action No.
                           CV-07-4070(DGT)(VVP)

DEPARTMENT OF HOMELAND SECURITY,
TRANSPORTATION SECURITY
ADMINISTRATION, AND WAYNE THOMAS,

        Defendants.

-------------------------------X

Trager, J:

    Plaintiff Margaret Zynger brings this action against the
Department of Homeland Security ("DHS"), the Transportation
Security Administration ("TSA") and Wayne Thomas, the Deputy
Federal Security Director at John F. Kennedy Airport ("JFK").
Plaintiff's Amended Complaint ("Am. Compl.") ¶ 4, 28.  Plaintiff
claims that she was employed as a security screener by TSA until
she was fired for failing a drug test.  According to plaintiff,
she argued to her superiors and before the agency review process
that her test was inaccurate; nonetheless they handled the matter
improperly and fired her without fairly evaluating her response
to the drug test.  She claims that the defendant's actions
violated her rights under 42 U.S.C. § 1981 and the Fifth

Amendment.[1]  Am. Compl. ¶ 3.  Plaintiff seeks a declaration that
she was wrongly fired, reinstatement, back pay and fifteen
million dollars, among other forms of relief.  Am. Compl. p. 5-6.
Defendants[2] have moved to dismiss plaintiff's claims under
Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and, in
the alternative, for summary judgment under Rule 56.  For the
reasons discussed below, defendants' motions are granted.

## Background

According to plaintiff's allegations, she is a white woman,
Am. Compl. ¶ 1, who was a Lead Transportation Security Officer at
JFK between July 28, 2002 and December 20, 2006.  Am. Compl. ¶ 6.
Prior to her termination, plaintiff had received above average
reviews for her performance and had not been disciplined.   Am.

---

[1]Plaintiff does not raise a claim under the Administrative
Procedure Act, 5 U.S.C. §§ 701, et. seq., ("APA").

[2]The status of defendant Thomas in this action has not
always been entirely clear.  The opening motion papers at issue
were only filed on behalf of TSA and DHS.  According to counsel
for DHS and TSA, this was because it was not initially clear that
defendant Thomas had been served.  Defendant's Reply ("Def.
Repl.") at 1 n.1.  However, prior to the filing of defendant's
reply papers, counsel became aware that defendant Thomas had been
served.  In defendant's reply papers, counsel clarifies that he
represents defendant Thomas to the extent that he is sued in his
official capacity and that defendant Thomas joins in defendants'
papers with respect to claims asserted against him in his
official capacity.  Def. Repl. at 1 n.1.  In their reply papers,
counsel also stands by the argument asserted in counsel's opening
papers that no individual capacity claims have been asserted
against defendant Thomas.  Def. Repl. at 1 n.1.

Compl. ¶ 6.  Plaintiff was aware that she would be subject to
random drug tests and that illegal drug use was prohibited.  Am.
Compl. ¶ 7.  Plaintiff was selected for a random drug test on
December 13, 2006 and tested positive for cocaine.  Am.
Compl. ¶ 7.

Plaintiff "repeatedly denied" using cocaine, but was fired
on or about December 20, 2006 by defendant Thomas.  Am.
Compl. ¶ 7.  She appealed to the Disciplinary Review Board
("DRB").  Am. Compl. ¶ 8.  The DRB upheld the decision to fire
her.  Am. Compl. ¶ 8.  In these proceedings, plaintiff admits
that defendants "provide[d] proof concerning the test result to
the satisfaction of lower level decision makers within the
agency."  Am. Compl. ¶ 9.

The DRB produced a written opinion.  Cunha Decl. Ex. B (TSA
Disciplinary Review Board Decision ("DRB Decision")).  The DRB
Decision found that plaintiff's drug test sample was tested twice
- each time by a different independent laboratory - and that both
tests found the sample positive for cocaine.  DRB Decision at 3-
4.  The DRB Decision noted that plaintiff's position was that the
test result was erroneous and her primary arguments were that
(1) there must have been a laboratory error or other
irregularities in the testing procedure, (2) alternatively, the
test result must have been caused by lidocane injections she had
received 36 hours earlier as part of treatment related to a car

crash and (3) the result was not trustworthy because the DNA in
the sample was not tested to confirm that it was her sample.  DRB
Decision at 2.

Among other things, the DRB considered plaintiff's argument
that she had received lidocane injections and that these could
have caused a false positive result.  DRB Decision at 3.  The DRB
determined that plaintiff had not produced evidence to
substantiate this defense and that the testing procedure had
excluded this possibility.  DRB Decision at 3.  The DRB found
that, while the first test performed on plaintiff's sample might
mistake a legal substance for an illegal one, the testing
procedure used in the second test was considered definitive for
establishing exactly what "drugs or metabolites" were present in
the sample.  DRB Decision at 3.  The DRB further found that
lidocane had a distinct chemical structure from cocaine and would
not produce a false positive in the second test.  DRB Decision at
3.  Additionally, the DRB found that "[t]he evidence does not
indicate any irregularities in the sample collection or the
testing process."  DRB Decision at 3.  It accordingly upheld her
firing on July 27, 2007.  DRB Decision at 1.

The defendants have also submitted a Rule 56.1 statement
specifying other facts that defendants claim are not disputed.
See Defendants' Statement Pursuant to Local Civil Rule 56.1
("Def. 56.1 St.").  Most significantly, the Rule 56.1 statement

indicates that plaintiff presented her defense that she had

gotten lidocane shots shortly before the drug test[3] to a Medical

Review Officer ("MRO").  Def. 56.1 St. ¶ 6.  The MRO evaluated

this defense and determined that it was not meritorious.  Def.

56.1 St. ¶ 6.  Additionally, defendant Thomas also discussed

plaintiff's lidocane defense with her before firing her.

Def. 56.1 St. ¶ 7.  Finally, plaintiff's test sample was examined

by two independent laboratories before her firing was upheld by

the DRB and the testing procedure ruled out lidocane as a source

of the positive result.  Def. 56.1 St. ¶ 4, 8, 12.

According to her complaint, plaintiff pressed a separate

claim for unemployment insurance benefits in a different

proceeding.  This claim was upheld on the grounds that the

defendants produced no proof regarding chain of custody for the

sample that was subject to drug testing.  Am. Compl. ¶ 9.

---

[3]The exact source of these alleged lidocane injections is
not entirely clear.  The DRB decision says that plaintiff alleged
that they were given by plaintiff's physician 36 hours before the
test as treatment for a car accident.  DRB Decision at 2.
Defendant's Rule 56.1 statement, by contrast, indicates that the
shot was given by her dentist.  Def. 56.1 St. ¶ 6.  As nothing
hinges on this distinction, the discrepancy need not be discussed
further.

## Discussion

### (1)

### Legal Standards Governing Defendants' Motions

In evaluating a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the court "accept[s] as true all material factual allegations in the complaint. However, argumentative inferences favorable to the party asserting jurisdiction should not be drawn." <u>Atlantic Mut. Ins. Co. v. Balfour Maclaine Intern. Ltd.</u>, 968 F.2d 196, 198 (2d Cir. 1992) (citations omitted).

In evaluating a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court "must accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally." <u>Roth v. Jennings</u>, 489 F.3d 499, 510 (2d Cir. 2007) (quotation omitted). To survive a motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atlantic v. Twombly</u>, 127 S.Ct. 1955, 1973 (2007). A plaintiff must "amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim <u>plausible</u>." <u>Iqbal v. Hasty</u>, 490 F.3d 143, 157-58 (2d Cir. 2007) (emphasis in original).

In evaluating a motion for summary judgment under Rule 56,

the court must determine if "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A motion for summary judgment will be granted when no reasonable jury could find for the non-moving party. See <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

## (2)

### Section 1981 Claims

Plaintiff's claims under 42 U.S.C. § 1981 will be dismissed. Generally speaking, § 1981 provides that citizens of all races shall have the benefit of the same protections afforded under the law to "white citizens." <u>See</u> 42 U.S.C. § 1981.[4] In particular, § 1981 provides that "[t]he rights protected by this section are protected against impairment by nongovernmental discrimination and impairment <u>under color of State law.</u>" 42 U.S.C. § 1981(c)

---

[4]Section 1981 provides that:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a).

(emphasis added). Defendants argue that plaintiff's § 1981 claims should be dismissed because (1) plaintiff has not alleged that any defendants were acting under color of state law, (2) plaintiff – a white woman – has not sufficiently alleged that her alleged harms are linked to discrimination against a non-white individual and (3) plaintiff has waived her § 1981 claims by failing to defend them in her response papers.

Plaintiff's § 1981 claims will be dismissed because she fails to allege that defendants were acting under color of state law. Where the "complained-of actions by the named defendants were conducted pursuant to their authority under federal, not state, law.... [plaintiff]... cannot satisfy the 'under color of state law' requirement of a § 1981 claim...." Dotson v. Griesa, 398 F.3d 156, 162 (2d Cir. 2005). In our case, the parties agree that DHS and TSA are federal agencies and that Wayne Thomas is a federal employee. Plaintiff never alleges that defendants were acting under color of state law. Accordingly, the § 1981 claims against all defendants are dismissed.

Additionally, the claims are dismissible for the independent reason that plaintiff fails to allege any link to the violation of a non-white citizen's rights. To state a claim under § 1981, a white plaintiff must allege that the actions taken against them are somehow related to rights protected by § 1981 – namely those owed to non-white citizens. Albert v. Carovano, 851 F.2d 561,

8

572-73 (2d Cir. 1988) (noting, for example, that a white person sanctioned for standing up for the rights of a minority citizen could bring a § 1981 suit).  Plaintiff does not even allege such a connection.  Accordingly, her § 1981 claims are dismissed for this reason as well.

Moreover, plaintiff has waived her § 1981 claims.  The defendants clearly raised their argument that the § 1981 claims should be dismissed.  Def. Mot. at 9.  However, in her response papers, plaintiff does not even mention these claims.  Accordingly, they have been waived and are also dismissible for this independent reason.  <u>Serby v. Town of Hempstead</u>, No. 04 Civ. 901 (DRH)(MLO), 2006 WL 2853869, at *13 (E.D.N.Y. Sept. 30, 2006).

### (3)

### Fifth Amendment Claims

Plaintiff's Fifth Amendment[5] claims will be dismissed in

---

[5]There does not appear to be any substantive difference between due process claims asserted under the Fifth Amendment's due process clause, as plaintiff's are, rather than the equivalent clause in the Fourteenth Amendment.  <u>Compare</u> <u>County of Sacramento v. Lewis</u>, 523 U.S. 833 (1998) (analyzing a substantive due process claim under the Fourteenth Amendment) <u>with</u> <u>Lombardi v. Whitman</u>, 485 F.3d 73, 78 (2d Cir. 2007) (analyzing a substantive due process claim under the Fifth Amendment); <u>see also</u> <u>Mathews v. Eldridge</u>, 424 U.S. 319, 322 (1976) (noting that procedural due process claims can arise under both the Fifth and Fourteenth Amendments and drawing no distinction between the two).

part.  As to the remainder of these claims, summary judgment will be granted in favor of the defendants and, in the alternative, they will be dismissed.  In essence, plaintiff's Fifth Amendment claims center around her allegation defendants acted in an arbitrary and unfair manner in firing her and that this violated her due process rights under the Fifth Amendment.  Defendants argue that these claims should be subject to either dismissal or summary judgment on the grounds that: (1) the claims against DHS and TSA (collectively the "agency defendants") are dismissible on grounds of sovereign immunity, (2) the remaining claims are directed against a federal employee in his <u>official</u> capacity and (3) even if the merits were reached, all of plaintiffs claims against all defendants fail because the procedures employed were fair and non-arbitrary.

**a.    Sovereign Immunity**

The claims against the agency defendants will be dismissed on the grounds of sovereign immunity.  "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." <u>F.D.I.C. v. Meyer</u>, 510 U.S. 471, 475 (1994).  Plaintiff claims that <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), provides a right of action to vindicate her rights under the Fifth Amendment and alternatively that she can sue under 28 U.S.C. § 1331 or § 1343.  Plaintiff's Response to Mot. to Dismiss at 1-2.

Plaintiff is mistaken on all counts. <u>Bivens</u> actions cannot
be brought against federal agencies. <u>See</u> <u>F.D.I.C. v. Meyer</u>, 510
U.S. 471, 486 (1994); <u>Robinson v. Overseas Military Sales Corp.</u>,
21 F.3d 502, 510 (2d Cir. 1994). Moreover, 28 U.S.C. § 1331 is
merely a general jurisdictional grant - it does not waive
sovereign immunity. <u>Mack v. United States</u>, 814 F.2d 120, 122 (2d
Cir. 1987). 28 U.S.C. § 1343 also does not provide a waiver of
sovereign immunity in this case. Though 28 U.S.C. § 1343
provides for civil rights suits, the relevant portions apply only
to actions committed under color of state law - not federal law -
or actions that violate federal statutes - not the Constitution.
<u>See</u> <u>Gasden v. U.S.P.S</u>, No. 95 Civ. 0734 (MBM), 1995 WL 758775, at
*5-6 (S.D.N.Y. Dec. 26, 1995) (discussing 28 U.S.C. § 1343(a)(3)
and (a)(4)). 28 U.S.C. § 1343 therefore has nothing to do with
the Fifth Amendment claims in this case, which involves
individuals acting under federal law and who are alleged to have
violated constitutional rights. Therefore, plaintiff's Fifth
Amendment claims against the agency defendants will be dismissed.

Defendant also argues that plaintiff's claim against
defendant Wayne Thomas must be dismissed because he has been sued
in his official capacity. <u>Bivens</u> actions against persons in the
federal service may only be brought against them in their
individual capacity. <u>See</u> <u>Robinson v. Overseas Military Sales
Corp.</u>, 21 F.3d 502, 510 (2d Cir. 1994). However:

11

> [A] complaint's failure to specify that claims against ...
> officials are asserted against them in their individual
> capacities does not justify an outright dismissal, for,
> [where] ... a complaint against public officials [does] not
> clearly specify whether officials are sued personally, in
> their official capacity, or both ... [t]he course of
> proceedings ... will [often] indicate the nature of the
> liability to be imposed.

Oliver Schools, Inc. v. Foley, 930 F.2d 248, 252 (2d Cir.

1991) (considering a § 1983 action) (quotation omitted,

penultimate brackets in original).

In our case, the complaint is not entirely clear about what

capacity defendant Thomas is being sued.  The complaint alleges

that Thomas injured plaintiff while "acting in his official

capacity as the Deputy Federal Security Director at John F.

Kennedy International Airport...."  Am. Compl. ¶ 28.  This could

either mean merely that Thomas was on the job when he allegedly

violated the plaintiff's rights or that he is being sued solely

in his official capacity.

Nothing else in the complaint clarifies the matter.  Indeed,

defendant Thomas does not even appear in the complaint's

enumeration of the defendants.  Am. Compl. ¶ 4.  Ordinarily, this

vagueness might be cause to dismiss with leave to amend the

complaint if it were unfair to require the defendant to proceed

without knowing in which capacity he was being sued.  See Oliver,

930 F.3d at 252.  However, because plaintiff's Fifth Amendment

claims can be resolved on the merits, no such action is

necessary.

**b.   Merits of Plaintiff's Fifth Amendment Claims**

With respect to the merits of plaintiff's Fifth Amendment claims, summary judgment will be granted in favor of the defendants and, alternatively, the claims will be dismissed for failure to state a claim.[6]   By its own terms, plaintiff's complaint alleges that defendants violated her "[s]ubstantive due process" rights by acting in a manner so egregious as to "shock[] the conscience...."   Am. Compl. ¶ 21 (quotation omitted). Defendants move to dismiss and, in the alternative, for summary judgment.   They argue that defendants actions with regard to plaintiff's firing meet the constitutional standard.

Before reaching the merits, however, it is necessary to determine whether there is jurisdiction over plaintiff's

---

[6]This holding is most relevant to defendant Thomas, for whom the merits must be reached as to the potential <u>Bivens</u> claim asserted against him in his individual capacity.   Though counsel for the defense does not appear to represent defendant Thomas in his individual capacity, the defendants specifically argue that the actions taken did not violate plaintiff's Fifth Amendment rights.   Def. Mot. at 15.   As plaintiff's Fifth Amendment claims against defendant Thomas arise out of Thomas's participation in the firing process, a finding that her rights were not violated in that process necessarily absolves defendant Thomas of liability for any rights violation.   Moreover, there appears to be no reason not to apply defense counsel's general arguments regarding the Fifth Amendment claims to defendant Thomas. Indeed, the defense's reply brief specifically notes that any Fifth Amendment claims against defendant Thomas in his individual capacity "would remain subject to dismissal for the reasons identified in Point IV of [defendants'] initial moving papers." Defendant's Reply at 1 n.1.   In addition to its relevance to defendant Thomas, the finding that there was no Fifth Amendment violation also constitutes an alternative holding with respect to the agency defendants.

constitutional claims for money damages, the equitable relief of

reinstatement and declaratory relief.  The Second Circuit has

held that federal employees subject to the Civil Service Reform

Act ("CSRA") may not sue under <u>Bivens</u> for money damages for

constitutional violations because this remedy is precluded by the

comprehensive regulatory and remedial scheme of the CSRA.  <u>Dotson</u>

<u>v. Griesa</u>, 398 F.3d 156, 166, 176 (2d Cir. 2005).  Moreover, the

<u>Dotson</u> court also held that CSRA's regulatory scheme also

indicates congressional intent to bar suits for equitable relief

as well.  <u>Id.</u> at 182.

However, the Second Circuit has recently declined to decide

whether the same logic applies to TSA screeners.  TSA screeners'

employment is governed by a special statute that may exempt them

provisions of the CSRA but could also indicate by its own terms

that <u>Bivens</u> and equitable remedies are not available.  <u>See</u>

<u>Conyers v. Rossides</u>, 558 F.3d 137, 150 (2d Cir. 2009) (discussing

49 U.S.C. § 44935 (note)).[7]  In analyzing a TSA screeners'

constitutional claims, the <u>Conyers</u> panel declined to determine

_____

[7]49 U.S.C. § 44935 (note) provides that:

> Notwithstanding any other provision of law, the Under
> Secretary of Transportation for Security may employ,
> appoint, discipline, terminate, and fix the
> compensation, terms, and conditions of employment of
> Federal service for such a number of individuals as the
> Under Secretary determines to be necessary to carry out
> the screening functions of the Under Secretary under
> section 44901 of title 49, United States Code.

14

whether 49 U.S.C. § 44935 (note) preempted remedies for
constitutional violations, deciding that it was unnecessary to
resolve the matter because the constitutional claims at issue
were meritless.  <u>Id.</u>  Similarly, in this case, it is not
necessary to decide what remedies - if any - are available to
plaintiff because her claims fail on the merits.

     **i.   Construed as a Motion for Summary Judgment**

     Defendants' motion will be construed as a motion for summary
judgment as it applies to the merits of the Fifth Amendment
claims and the motion is granted.  In deciding whether to convert
a motion to dismiss into a motion for summary judgment, "[t]he
essential inquiry is whether the appellant should reasonably have
recognized the possibility that the motion might be converted
into one for summary judgment or was taken by surprise and
deprived of a reasonable opportunity to meet facts outside the
pleadings."  <u>National Ass'n of Pharmaceutical Mfrs., Inc. v.
Ayerst Laboratories</u>, 850 F.2d 904, 911 (2d Cir. 1988) (quoting <u>In
re G. & A. Books, Inc.</u>, 770 F.2d 288, 295 (2d Cir.1985), cert.
denied, 475 U.S. 1015, 106 S.Ct. 1195, 89 L.Ed.2d 310 (1986))
(brackets in original); <u>see also</u> <u>Aetna Cas. and Sur. Co. v.
Aniero Concrete Co., Inc.</u>, 404 F.3d 566, 573 (2d Cir. 2005).

     Here, plaintiff had sufficient notice of the possibility
that the motion might be construed as one requesting summary
judgment.  Though styled as a motion to dismiss, Def. Mot. at 1,

defendant's motion requests summary judgment as an alternative

form of relief.[8]  The motion both notes the standard for summary

judgment in an introductory section and also specifically

requests summary judgment in the section relating to plaintiff's

Fifth Amendment claims.  Def. Mot. 8, 18 n.11.  Moreover, the

defense submitted a Rule 56.1 statement with its opening papers.

Such a document is submitted with motions for summary judgment.

<u>See</u> Local Rule 56.1.  Indeed, the defendants notice of motion

explicitly indicated that summary judgment would be requested as

an alternative form of relief.  Accordingly, plaintiff has had

adequate notice that summary judgment might be considered and

there is no bar to treating defendants motion as a motion for

summary judgment.[9]

_____

[8]The mere fact that a motion to dismiss requests summary
judgment as an alternative form of relief does not always resolve
the question of whether there was notice.  <u>See</u> <u>National Ass'n of
Pharmaceutical Mfrs., Inc. v. Ayerst Laboratories</u>, 850 F.2d 904,
911-12 (2d Cir. 1988) (finding that a plaintiff had not been
given adequate notice of the possibility of summary judgment on
one of plaintiff's claims where, though the motion requested
summary judgment in the alternative, other factors suggested that
summary judgment defendant only sought summary judgment on
another claim and not the one in question).

[9]Plaintiff has also submitted a copy of the Unemployment
Insurance Appeal Board decision referenced in her complaint as am
attachment to her response papers.  <u>See</u> Am. Compl. ¶ 9;
Plaintiff's Response at Ex. 4.  Where a party has submitted
evidence outside the complaint, that factor weighs in favor of
that party having had sufficient notice that a motion to dismiss
might be converted into a motion for summary judgment and having
had an adequate opportunity to respond.  <u>See</u> <u>Groden v. Random
House, Inc.</u>, 61 F.3d 1045, 1053 (2d Cir. 1995).  Whether the

16

Additionally, the facts asserted by defendants in their Rule 56.1 statement will be taken as true for purposes of the summary judgment motion because plaintiff has not contested them. Under Rule 56.1, "[e]ach numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted...." Local Rule 56.1(c). Plaintiff has not submitted any Rule 56.1 statement and has not clearly indicated any disagreement with the facts asserted in defendant's Rule 56.1 statement.

To be sure, to be taken as true, Rule 56.1 statements must be supported by citations to evidence and that evidence must be admissible. Local Rule 56.1(d). In our case, the most relevant facts from defendants' Rule 56.1 statement are supported by citations to admissible evidence. Specifically, the Rule 56.1 statement indicates that (1) plaintiff had an opportunity to contest the positive drug test result before a Medical Review Officer ("MRO") who evaluated her defense that she had gotten

_____

Unemployment Insurance Appeal Board decision constitutes a document outside the complaint is arguable. For example, documents integral to the complaint and those incorporated into the complaint by reference may be considered on a motion to dismiss. Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). These sorts of documents therefore should not be viewed as being outside the complaint in determining the question of adequate notice to convert a motion. However, it need not be decided whether the Unemployment Insurance Appeal Board decision is part of the complaint because the other evidence of notice to the plaintiff of the possibility of conversion is overwhelming.

lidocane shots shortly before the drug test, Defendants'
Statement Pursuant to Local Civil Rule 56.1 ("Def. 56.1 St.")
¶ 5-6, (2) that defendant Thomas also discussed plaintiff's
purported explanation for the positive test result with her, Def.
56.1 St. ¶ 7, and (3) that her test sample was tested by two
independent laboratories, Def. 56.1 St. ¶ 4, 8.  All of these
statements are cited to the DRB decision.  Def. 56.1 St. ¶ 4-8.
That decision, in turn, is admissible for the truth as an
official record under Rule 803(8).  <u>See</u> Fed.R.Evid. 803(8); <u>Henry</u>
<u>v. Daytop Village, Inc.</u>, 42 F.3d 89, 96 (2d Cir. 1994) (admitting
an ALJ's factual findings for the truth of the matter asserted).
Accordingly, because the plaintiff has not contested any of these
facts, they will be taken as true for purposes of the summary
judgment.

In view of the evidence in the record, summary judgment in
favor of the defendants will be granted.  To establish a
substantive due process claim, a plaintiff must show (1) that she
was deprived a cognizable liberty or property interest and (2)
that the defendants acted in a manner so egregious as to violate
constitutional standards.  <u>Cf.</u> <u>Brady v. Town of Colchester</u>,
863 F.2d 205, 211 215 (2d Cir. 1998).  In our case, it will be
assumed for purposes of argument that plaintiff was deprived of a

cognizable property interest.[10]

However, no reasonable jury could find that defendants'
actions were sufficiently egregious as to offend plaintiff's
substantive due process rights.

> Substantive due process is an outer limit on the legitimacy
> of governmental action. It does not forbid governmental
> actions that might fairly be deemed arbitrary or capricious
> and for that reason correctable in a state court lawsuit
> seeking review of administrative action.  Substantive due
> process standards are violated only by conduct that is so
> outrageously arbitrary as to constitute a gross abuse of
> governmental authority.

> Natale v. Town of Ridgefield, 170 F.3d 258, 263 (2d Cir.
> 1999).

In her complaint, plaintiff argues that the procedure used
to fire her was flawed because (1) the DRB used a standard of
proof that required a lower "degree of certainty that the court
would require considering the enormity of the consequences
imposed upon the Plaintiff[,]" Am. Compl. ¶ 21, and (2)
defendants failed to introduce evidence regarding the chain of

---

[10]Plaintiff alleges in her complaint that her employer
violated her rights in "terminat[ing] her services with out [sic]
good cause in violation of her employment rights as a employee of
TSA...." Am. Compl. ¶ 10.  If true, this would likely establish
a sufficient property interest.  See Ciambriello v. County of
Nassau, 292 F.3d 307, 313 (2d Cir. 2002) (considering procedural
due process and finding that ("[a] public employee has a property
interest in continued employment if the employee is guaranteed
continued employment absent 'just cause' for discharge.").
Though plaintiff has not offered evidence to support this
assertion, given the unusual procedural posture of the case and
the fact that her claims can be resolved on other grounds, this
fact will be assumed for purposes of argument.

custody for the test samples.  Am. Compl. ¶ 1.

No reasonable jury could sustain these claims.  It would not be "outrageously arbitrary" or "a gross abuse of governmental authority" to fail to use the same standard of proof for making a personnel decision that a court would employ in deciding a civil case.  Moreover, it appears that the DRB employed a preponderance of the evidence standard – the same used by courts in deciding the merits of most civil matters.  DRB Decision at 2. Plaintiff's allegation that defendants failed to provide proof regarding the chain of custody does not raise a constitutional issue.  The DRB decision specifically found that "[t]he evidence does not indicate any irregularities in the sample collection or the testing process."  DRB Decision at 3.  It therefore clearly considered the general issue of the integrity of the testing procedures and reached a reasoned finding.  Its failure to specifically discuss the chain of custody issue does not render it grossly abusive.[11]

_____

[11]Plaintiff alleges that an administrative law judge for the Unemployment Insurance Appeal Board found that the defendants failure to provide evidence regarding the chain of custody of the sample was decisive in plaintiff's favor in her claim for unemployment insurance benefits and has attached a copy of this decision to her response papers.  Am. Compl. ¶ 1; Plaintiff's Response at Ex. 4.  This, however, does not indicate that the defendants acted in a grossly arbitrary manner in firing her. The fact that a different administrative body considering a different legal question treated plaintiff's claim differently sheds little, if any, light on defendants actions here – particularly given the other overwhelming indications present in this case that defendants acted in a non-arbitrary fashion.

Moreover, the defendant's actions in handling plaintiff's firing plainly satisfied constitutional due process standards. Based on the facts in the Rule 56.1 statement, plaintiff had three opportunities to present an explanation for her positive test result: one before the MRO, one before defendant Thomas and one before the DRB.  Moreover, her sample was tested twice by two different independent laboratories and lidocane was ruled out as the source of a false positive result.  Finally, as noted above, the DRB decision evaluated her arguments and reached a reasoned conclusion.  Indeed, there was nothing grossly arbitrary about the result.  Taking these facts together, no reasonable jury could find that there was a gross abuse of governmental power and accordingly summary judgment on the Fifth Amendment claims is granted in favor of defendants.

### ii.  Construed as a Motion To Dismiss

In the alternative, if the defendants' papers were construed as a motion to dismiss with regard to the plaintiff's Fifth Amendment claims, the motion would be granted.  Even based on the somewhat more limited range of material properly considered for a motion to dismiss, it is clear that plaintiff cannot state a claim for a violation of her substantive due process rights.  In considering a motion to dismiss, a district court may consider the complaint,

> any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.

> Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint.

Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002) (citations and quotations omitted). A court may "also consider matters of which judicial notice may be taken...." Kramer v. Time Warner Inc., 937 F.2d 767, 773 (2d Cir. 1991).

In our case, the complaint and the DRB decision may both be considered. The DRB decision is properly considered because it is integral to the complaint. Plaintiff's claims arise out of her firing, which was upheld by the DRB decision. Moreover, her complaint alleges flaws in the DRB decision and proceedings. Indeed, her claim that the DRB employed too low a standard of proof relies directly on the reasoning of the DRB decision. Alternatively, judicial notice may be taken of the DRB decision - though its factual findings may not be taken as true for purposes of the motion to dismiss. Cf. Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc., 969 F.2d 1384, 1388 (2d Cir. 1992) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings."); E.I. Du Pont de Nemours & Co., Inc. v. Cullen, 791 F.2d 5, 7 (1st Cir. 1986) (taking notice of a complaint filed in another action to ascertain the nature of the claim asserted) (quoted approvingly by Liberty Mut., 969 F.2d at 1388).

22

Plaintiff has failed to state a claim for a substantive due process violation. This is apparent even when only the allegations in her complaint are considered. Indeed, plaintiff herself alleges that she "repeatedly denied ever using cocaine[,]" indicating that she had a chance to respond. Am. Compl. ¶ 10. Her allegations also indicate that she was given a chance to appeal the decision to fire her to the DRB and that she did so. Am. Compl. ¶ 7-8. Moreover, the complaint notes that defendants "provide[d] proof concerning the test result to the satisfaction of lower level decision makers within the agency." Am. Compl. ¶ 9. Taken together, the complaint indicates that the decision was reviewed, that she had a chance to submit an appeal and that defendants were required to submit evidence in order to justify her firing. Her allegations that the too low a burden of proof was used or that the specific issue of chain of custody for her test samples was not considered or proven do not suffice to show gross arbitrariness. In short, defendant's actions do not shock the constitutional conscience. When the DRB decision itself is considered, it is even clearer that she cannot state a claim for violation of her substantive due process rights. As noted above, the DRB decision generally considers the arguments she raises and offers a reasoned conclusion that is hardly arbitrary.

**c.  Procedural Due Process**

Though plaintiff explicitly styles her claim as being for violation of her substantive due process rights, it is worth noting that the result would be the same even if her claims were construed as relating to a violation of her procedural due process rights.  This is so regardless of whether the defense motion is construed as a motion to dismiss or a motion for summary judgment.  In evaluating a procedural due process claim, "[w]e must determine (1) whether [plaintiff] possessed a liberty or property interest and, if so, (2) what process he was due before he could be deprived of that interest."  Ciambriello v. County of Nassau, 292 F.3d 307, 313 (2d Cir. 2002).  Plaintiff likely has a sufficient property interest at stake.  She alleges in her complaint that her employer violated her rights in "terminat[ing] her services with out [sic] good cause in violation of her employment rights as a employee of TSA...."  Am. Compl. ¶ 10; see Ciambriello, 292 F.3d at 313 ("A public employee has a property interest in continued employment if the employee is guaranteed continued employment absent 'just cause' for discharge.").

In determining the level of process due, it is necessary to balance the individual's interest in avoiding the deprivation, the value of additional procedures and the government's interest - principally the cost of additional procedures. Ciambriello, 292

24

F.3d at 319-20.  The Supreme Court has held that a tenured public

employee facing firing is owed notice, "a pretermination

opportunity to respond, coupled with post-termination

administrative procedures...."  <u>Cleveland Bd. of Educ. v.</u>

<u>Loudermill</u>, 470 U.S. 532, 548-49 (1985).

In our case, plaintiff received adequate procedural

protections.  Plaintiff had a pre-termination opportunity to

respond.  <u>See</u> Def. 56.1 St. ¶ 5-7 (noting that plaintiff had the

chance to respond to the test result by giving explanations to

both the MRO and her supervisor, defendant Thomas); <u>see also</u> Am.

Compl. ¶ 10 (noting that plaintiff "repeatedly denied ever using

cocaine[,]" indicating that she had a chance to respond).

Plaintiff also had a chance to seek post-termination review by

the DRB.  <u>See</u> Def. 56.1 St. ¶ 9-12 (discussing the DRB

proceedings); <u>see also</u> Am. Compl. ¶ 8 (same).  Accordingly, even

if styled as a procedural due process claim, defendants' motion

would be granted.[12]

---

[12]It is not entirely clear whether plaintiff could have
sought review in this court of her firing under the
Administrative Procedure Act ("APA").  The Second Circuit has
found that TSA's decision not to use the veteran's preference
procedures employed by the Federal Aviation Administration was
committed to agency discretion and, therefore, not subject to
review under the APA.  <u>See</u> <u>Conyers v. Rossides</u>, 558 F.3d 137, 150
(2d Cir. 2009).  A similar rationale might indicate that APA
review is not available for TSA's decision to fire an employee.
<u>Cf.</u> <u>id.</u>
In any case, the presence or absence of a right of review
under the APA has no impact on the outcome of this case.  Had
plaintiff brought an APA claim, it would have been rejected.  The

## Conclusion

For the aforementioned reasons, the defendant's motions to dismiss and for summary judgment are granted with respect to all claims against all defendants. Plaintiff's claims under 42 U.S.C. § 1981 are dismissed with prejudice with respect to all defendants. Plaintiff's Fifth Amendment claims against the agency defendants are dismissed on grounds of sovereign immunity. Additionally, summary judgment is granted in favor of all defendants on the merits of her Fifth Amendment claims and, alternatively, these claims are dismissed. The Clerk of Court is directed to close the case.

Dated: Brooklyn, New York
       May   11, 2009

                              SO ORDERED:


                              _____/s/_____
                              David G. Trager
                              United States District Judge

_____

careful review her claim received indicates that the agency did not act in an arbitrary or capricious manner. If APA review were available in district court, plaintiff would plainly have no procedural due process claim because the procedures available to her would match those found sufficient in Loudermill almost exactly. See Loudermill, 470 U.S. at 535-36 (noting that judicial review was available to Loudermill); see also id. 548-49. If APA review were not available, this difference would not indicate a violation of her procedural due process rights. The review procedures that occurred in her case gave her notice of the charges against her and multiple opportunities to be heard. This alone shows that she received due process. Moreover, APA review would have provided her no practical benefit. Therefore, APA review would have been utterly superfluous in this case and was not required by constitutional procedural due process standards.